UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TAMARA G.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:22-cv-02312-TWP-MG |
| | ) |
| MARTIN J. O'MALLEY Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff Tamara G. ("Tamara") appeals the Administrative Law Judge's decision denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Pursuant to 28 U.S.C § 636, the Court referred the matter to the Magistrate Judge (Filing No. 13), who submitted his Report and Recommendation on February 22, 2024, recommending that the decision of the Commissioner be affirmed (Filing No. 14). Tamara timely filed Objections to the Magistrate Judge's Report and Recommendation (Filing No. 15). For the reasons set forth below, the Court **overrules** Tamara's objections and **adopts** the Magistrate Judge's Report and Recommendation, **affirming** the decision of the Commissioner.

**I.     BACKGROUND**

The relevant background facts are set forth in detail in the Magistrate Judge's Report and Recommendation (Filing No. 14) and will thus only be summarized in this Entry.

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

Tamara was 45 years old on her July 26, 2019 alleged disability onset date. (Filing No. 6-3 at 2). She filed her application for DIB on July 17, 2020, asserting the following impairments: congenital heart defect, paroxysmal atrial fibrillation, cardiac pace maker, nonischemic cardiomyopathy, atrial flutter, patrial anomalous pulmonary venous connection, major depressive disorder, adjustment disorder with anxious mood, chronic nonalcoholic liver disease, and migraine (Filing No. 6-3 at 2).

Tamara's application was denied initially on October 9, 2020, and again on reconsideration on March 5, 2021. Tamara timely requested a hearing on her application, which was held before Administrative Law Judge Brian Burgtorf ("ALJ") on December 9, 2021, via telephone due to the COVID-19 pandemic. The ALJ then issued a decision on January 27, 2022, denying Tamara's application, having determined that she was not disabled. Tamara sought review of the ALJ's decision by the Appeals Council. On September 30, 2022, the Appeals Council denied Tamara's request to review the ALJ's decision, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.

Tamara timely filed her Complaint with the Court on December 1, 2022, seeking judicial review of the Commissioner's decision (Filing No. 1). On October 5, 2023, this Court issued an order referring the matter to Magistrate Judge Mario Garcia for a Report and Recommendation ("R&R"). On February 22, 2024, the Magistrate Judge filed his R&R adopting the decision of the ALJ and Commissioner. Thereafter, on March 7, 2024, Tamara filed her Objections to the R&R.

## II.   LEGAL STANDARD

When the Court reviews the Commissioner's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support

a conclusion." *Id.* The Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). To be affirmed, the ALJ must articulate his analysis of the evidence in his decision, and while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176. The Court "must be able to trace the ALJ's path of reasoning" from the evidence to his conclusion. *Clifford v. Apfel*, 227 F.3d 863, 874 (7th Cir. 2000).

When a party raises specific objections to elements of a magistrate judge's report and recommendation, the district court reviews those elements *de novo*, determining for itself whether the Commissioner's decision as to those issues is supported by substantial evidence or was it the result of an error of law.  *See* Fed. R. Civ. Pro. 72(b). The district court "makes the ultimate decision to adopt, reject, or modify the report and recommendation, and it need not accept any portion as binding; the court may, however, defer to those conclusions . . . to which timely objections have not been raised by a party." *Sweet v. Colvin*, No. 12-cv-439, 2013 WL 5487358, at *1 (S.D. Ind. Sept. 30, 2013) (citing *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 759–61 (7th Cir. 2009)).

### III.    DISCUSSION

Tamara argues the Court should decline to adopt the R&R and reverse the Commissioner's decision because the ALJ committed legal errors in four ways. First, the ALJ erred in disregarding medical evidence predating Tamara's alleged onset date ("AOD") and post-dating her date last insured ("DLI"). Second, the ALJ improperly weighed medical opinions and evidence. Third, the

3

ALJ improperly assessed Tamara's subjective symptoms and failed to consider a statement from Tamara's husband. And fourth, the ALJ failed to consider certain RFC restrictions and limitations. The Court will address each alleged error in turn.

A.      **Consideration of Evidence Outside Relevant Period**

Tamara first argues that the ALJ erroneously failed to consider evidence outside the relevant period, and instead only summarized pre-AOD and post-DLI evidence (Filing No. 15 at 3–4). The Commissioner argues, and the Magistrate Judge concluded, that the ALJ appropriately considered the pre-AOD and post-DLI evidence (Filing No. 14 at 7). After reviewing the issue *de novo*, the Court agrees with the Magistrate Judge.

Though the ALJ began some paragraphs with the phase "[d]uring the relevant period," he did not limit his entire analysis solely to evidence from the relevant period. For example, the ALJ explained that Tamara's subjective complaints of "almost constant lower extremity swelling" were contradicted by pre-AOD evidence that Tamara "has a history of lower extremity edema/swelling, but not constant swelling," and that "[a]t other times" before the AOD, Tamara "denied and/or did not have observable lower extremity swelling/edema" (Filing No. 6-2 at 18 (citing Filing No. 6-7 at 78, 161, 181, 201)). The ALJ also explained Tamara's cardiovascular and respiratory examinations were found to be normal during several post-DLI examinations (Filing No. 6-2 at 19 (discussing examinations from February through August 2021)). The ALJ specifically noted that during an April 2021 examination, Tamara's "pacemaker was interrogated and the medical staff could not reproduce [Tamara's] alleged symptoms." *Id.*  And during an August 2021 examination, despite Tamara's report "that she had been stressed because she was planning to visit her daughter and fiancé in Florida," Tamara's cardiovascular and respiratory examinations were normal "with no evidence of fibrillation." *Id.*

Further, the ALJ discussed evidence of examinations both during and after the relevant period in concluding that "[t]he evidence does not show that [Tamara] has consistent migraine headaches or vertigo" or demonstrate "significant functional deficits that would prevent [her] from performing all work activity." *Id.* at 19–20. The ALJ specifically noted that in May 2020, Tamara reported that she had been experiencing chronic daily headaches "lately," but in September 2020, she denied having headaches. In April and July 2021, Tamara was diagnosed with migraine headaches and benign paroxysmal positional vertigo, but by August 2021, Tamara reported that the migraine headaches had improved, and in September 2021, she reported that her vertigo had decreased. Based on this entire history, the ALJ concluded that the evidence did not show "consistent" migraine headaches or vertigo, such that those conditions would prevent Tamara from performing all work activity.

Additionally, the ALJ concluded that the medical evidence did not demonstrate that Tamara had disabling mental impairments. In addition to discussing evidence from the relevant period, the ALJ discussed the "[g]enerally unremarkable mental health findings" that "continued into 2021" ([Filing No. 6-2 at 21](Filing No. 6-2 at 21)). The ALJ specifically noted that "in August 2021, [Tamara] reported that she was preparing another trip to Florida," which was "inconsistent with her allegations of disability." *Id.* Overall, the ALJ explained that "Exhibits 1F, 3F, 5F, 7F, and 9F" support the conclusion that Tamara's mental impairments were not severe as alleged, *id.*; except for 7F, each of those exhibits includes medical records from outside the relevant period.

The Court therefore concludes that the ALJ did not disregard pre-AOD or post-DLI evidence and therefore did not commit legal error on that basis.

**B.     Consideration of Treating Physicians' Opinions and Medical Evidence**

Tamara next argues that the ALJ failed to properly evaluate the opinions of her treating cardiologists, Dr. Parin J. Patel ("Dr. Patel") and Dr. Michael Walls ("Dr. Walls") and failed to adequately explain how he weighed the medical evidence (Filing No. 15 at 5).

   **1. Treating Physicians' Opinions**

The ALJ found Dr. Patel's and Dr. Walls' opinions unpersuasive because they were inconsistent with the "preponderance of the documentary evidence" and contradicted by "findings at Exhibits 1F, 3F, 5F, 9F, and 13F" (Filing No. 6-2 at 22). The Magistrate Judge concluded that although this brief analysis "did not initially convince this Court that meaningful review has taken place, the specific notations in the ALJ's narrative of the medical evidence does," and the ALJ was not required to restate his analysis in his discussion of Dr. Patel's and Dr. Walls' opinions. (Filing No. 14 at 13.) Tamara argues that the R&R improperly attempts to provide analysis to the ALJ's decision that the ALJ himself did not provide. Here, reviewing the issue *de novo* and reading the ALJ's opinion as a whole, the Court agrees with the Magistrate Judge. *See Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir. 2004) ("[I]t is proper to read the ALJ's decision as a whole, and . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five"); *see also Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir. 1985) ("[W]e examine the [ALJ]'s opinion as a whole to ascertain whether he considered all of the relevant evidence, made the required determinations, and gave supporting reasons for his decisions.").

Pages five through eleven of the ALJ's decision (Filing No. 6-2 at 15–12) contain not only a recitation of the objective medical evidence, but also an analysis of how that evidence contradicts and is inconsistent with Tamara's subjective complaints and the treating physicians' opinions. The Court will cite only a few examples.

Drs. Patel and Walls both opined that Tamara required an elevation restriction (Filing No. 6-10 at 49, 67). On page eight of his decision, the ALJ cited ample medical evidence showing that while Tamara suffered from lower extremity swelling, the medical evidence did not demonstrate that swelling was constant or required elevation (Filing No. 6-2 at 18). The ALJ also explained why Tamara's testimony regarding the need to elevate her legs during a trip to Florida was not credible. *Id.* at 21.

Dr. Walls also opined that Tamara's depression and stress were so severe that she could not perform even low-stress work, and both Dr. Patel and Dr. Walls opined that Tamara would be off-task or absent from work (Filing No. 6-10 at 48–50, 66–68). However, the ALJ noted that mental deficits to the extent alleged were not reflected in any of the medical records, and that even during periods of reported depression and anxiety, Tamara did not exhibit issues with her orientation or memory (Filing No. 6-2 at 20). The ALJ also noted how medical records showed that beginning February 2020, Tamara exhibited mild or no depression, she generally exhibited normal mood and affect, her depression was reportedly "much better" with medication, and her depression and anxiety were either stable or improving beginning September 2020. *Id.* at 20–21.

The ALJ also conducted a thorough discussion of how Tamara's mental impairments might affect her ability to perform low-stress work, citing medical records showing that despite her mental impairments, Tamara exhibited only mild limitations in understanding, remembering or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* at 15–16. The ALJ was not required to restate these analyses before concluding that the treating physicians' opinions are unpersuasive. The ALJ did not commit error in his evaluation of the persuasiveness of the treating physicians' opinions.

## 2. Weighing of Medical Evidence

Tamara also argues that the ALJ's analyses ignored evidence supporting a finding of disability and did not explain why certain evidence outweighed other evidence (Filing No. 15 at 7). The Court disagrees. The ALJ readily and repeatedly identified evidence supporting Tamara's claims of physical and mental impairments, but the ALJ also explained why the weight of the documentary evidence showed that Tamara did not exhibit those impairments to the degree alleged, or to a degree that would warrant the limitations proposed by Drs. Patel and Walls.

Tamara additionally contends that the ALJ's decision is inherently inconsistent because it concludes based on the same evidence that Tamara is both more limited than the state agency reviewing physicians concluded she was, and less limited than Drs. Patel and Walls concluded she was. *Id*. The Court sees no inconsistency in these findings. As the ALJ explained, the preponderance of the evidence only partially supported the opinions of the state agency reviewing physicians regarding some limitations (exertional level, postural, environmental, and sedentary work), and only partially supported the opinions of Drs. Patel and Walls regarding other limitations (sit/stand, elevation, stress, and time-off-task/absenteeism).

The ALJ's decision, when read as a whole, reflects consideration of evidence supporting and opposing Tamara's subjective complaints and the physicians' opinions, and it creates a logical bridge from the documentary evidence to the ALJ's conclusion that the treating physicians' opinions were, on the whole, largely contradicted by and inconsistent with the documentary medical evidence. The Court finds no error in the ALJ's conclusion that Dr. Patel's and Dr. Walls' opinions were unpersuasive, or in the ALJ's weighing of the medical evidence.

C.   **Subjective Symptom Complaints and Third-Party Statements**

Next, Tamara argues that the ALJ erroneously disregarded her subjective complaints and statements from her husband (Filing No. 15 at 9–10). The Court addresses each issue in turn.

8

1. **Subjective Complaints**

Under Social Security Rule ("SSR") 16-3p, the ALJ must first determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms. 2017 WL 5180304, at *3. Then, the ALJ must evaluate the intensity and persistence of a claimant's symptoms and determine the extent to which they limit her ability to perform work-related activities. *Id.* at *3–4. "In evaluating a claimant's credibility, the ALJ must comply with Social Security Rule 16-3p and articulate the reasons for the credibility determination." *Karen A.R. v. Saul*, No. 18-cv-2024, 2019 WL 3369283, at *5 (S.D. Ind. July 26, 2019).

An ALJ's credibility finding is generally given considerable deference and only overturned if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). An ALJ's evaluation is "patently wrong" and subject to remand when the ALJ's finding lacks any explanation or support. *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014). Ultimately, the ALJ must offer an explanation that allows the Court to determine whether he reached his decision in a rational manner, logically based on his specific findings and the evidence in the record. *Murphy*, 759 F.3d at 816. Thus, "[a]s long as the ALJ's decision is supported by substantial and convincing evidence, it deserves this court's deference." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007).

Tamara argues that the ALJ improperly disregarded her subjective complaints regarding her cardiac conditions solely based on evidence of conservative treatments and normal examination findings (Filing No. 15 at 9). Tamara specifically argues that the ALJ should not have focused solely on "medical management" in light of earlier treatments that Tamara has undergone, including heart surgery, cardiac ablation, cardioversion, and pacemaker insertion. *Id.* at 9–10. Tamara fails to explain how these more aggressive treatments, which predate the AOD, make the ALJ's decision erroneous. Tamara did not require any of these more aggressive treatments during

9

the relevant period. As the ALJ explained, the fact that Tamara's cardiac conditions were well-managed with only conservative treatment[2] during the relevant period shows that her conditions were not as severe as alleged. *See Prill v. Kijakazi*, 23 F.4th 738, 749 (7th Cir. 2022) ("Prill did not undergo major surgery *during the period of time under consideration*, and the most aggressive treatment she received consisted of injections that have been described as conservative treatments." (emphasis added)).

Moreover, as the Magistrate Judge explained, the ALJ did not merely rely on generic "normal" findings during medical examinations. He relied on several tests that directly conflicted with Tamara's subjective complaints ([Filing No. 14 at 16](#)). For example, in September 2019, Tamara complained of a "varying heart rate," but "cardiovascular and respiratory examinations were normal" ([Filing No. 6-2 at 17](#)). The ALJ also noted that in April 2021, Tamara sought Dr. Patel to discuss "her pacemaker and her arrhythmias," but on her previous visit "her pacemaker was interrogated and the medical staff could not reproduce [her] alleged symptoms." *Id.* at 19. The Court notes that this case is dissimilar to one in which the claimant's condition is not susceptible to any type of objective testing or examination, like chronic pain conditions. *See Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) ("Since severe pain is consistent with 'the absence of significant findings upon diagnostic testing and physical examination,' which would not reveal a psychological origin of pain, the doctors had no choice but to take Carradine's complaints of pain 'at face value' and treat her."). Here, at least some of Tamara's complaints were susceptible to testing and examination, so the "normal" findings identified by the ALJ not only fail to support Tamara's complaints, but also affirmatively contradict them. The ALJ therefore did not err in relying on the "normal" results of those tests and examinations in discounting Tamara's subjective

---

[2] Tamara does not dispute the ALJ's characterization of her cardiac medication regimen as conservative.

10

complaints. The Court cannot conclude that the ALJ was "patently wrong" to find that Tamara's subjective complaints were inconsistent with the record.

### 2. Third-Party Statement

Tamara also claims that the ALJ erred by failing to consider her husband's testimony regarding her alleged symptoms and functioning (Filing No. 15 at 10–11). The Magistrate Judge agreed that the ALJ erred by failing to consider the husband's statements but concluded that the error was harmless, since the statements were "substantially similar" to Tamara's statements and the ALJ properly supported his rationale for discounting Tamara's statements (Filing No. 14 at 18). The Court agrees with the Magistrate Judge that this error was harmless.

The Social Security Administration recognizes the importance of statements from family members. 20 C.F.R. § 404.1545(a)(3) (permitting claimant to submit "descriptions and observations" about her functional limitations from "family, neighbors, friends, or other persons"); SSR 16-3p (nonmedical sources such as family and friends may provide helpful information to assess the claimant's intensity, persistence, and limiting effects of symptoms and must be considered properly).

However, "[w]here a third-party statement is essentially redundant to other testimony in the record, it is not a failure if the ALJ fails to discuss it." *Victoria A. v. Saul*, No. 19-cv-00216, 2020 WL 3950534, at *8 (S.D. Ind. June 19, 2020) (citing *Carlson*, 999 F.2d at 181 ("[The claimant's] brother, Roland's, testimony did not constitute a separate 'line of evidence.' Rather it served strictly to reiterate, and thereby corroborate, [the claimant's] own testimony concerning his activities and limitations. . . . [The ALJ], therefore, did not err by declining to address Roland's testimony specifically.")). Here, the statement from Tamara's husband does nothing more than repeat and reinforce her own testimony regarding her conditions, functioning, and daily activities. Tamara does not identify any way in which her husband's statement is not redundant of her own

statements, which the ALJ appropriately found inconsistent with the record evidence. The ALJ's error in failing to consider the third-party statement was therefore harmless, and remand is not required on this claim.

D.  **Failure to Consider RFC Restrictions and Limitations**

An RFC represents "the maximum a person can do—despite his limitations—on a regular and continuing basis, which means roughly eight hours a day for five days a week." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). Tamara argues that the ALJ erred in failing to consider four types of RFC restrictions or limitations: (1) a sit/stand restriction; (2) a leg elevation restriction; (3) a stress-related restriction; and (4) a time-off-task and absenteeism limitation.

1.  **Sit/Stand Restriction**

Tamara first argues that the ALJ erred in failing to address her need to change positions often due to her cardiac conditions (Filing No. 15 at 11–12). The Magistrate Judge acknowledged that the ALJ "did not account for this option in the RFC," but found that the RFC limited Tamara to sedentary work, with other limitations, and that "[n]o limitation in sit/stand does not necessarily conflict with the requirement of the full range of sedentary work involving the ability to stand or walk no more than two hours, or sit approximately 6 hours, of an eight-hour workday." (Filing No. 14 at 21.) The Magistrate Judge pointed to the ALJ finding that "Tamara G.'s subjective symptoms to be inconsistent with the objective evidence, noting normal gait, station, coordination, sensation throughout the record." *Id*. And reasoned that a sit/stand limitation did not need to be present in the RFC for the vocational expert to determine job availability. *Id.*

Tamara argues the Report and Recommendation is inconsistent with SSR 96-9p, which explains sedentary work. 1996 WL 374185 (July 2, 1996). (Filing No. 15 at 12). SSR 96-9p states that an individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. She points out that the "RFC assessment must be specific as to the

12

frequency of the individual's need to alternate sitting and standing." *Id*. Thus, Tamara contends "the ALJ's Decision, and subsequently the R&R, do not comply with Agency regulations, which requires remand." *Id*.

The Commissioner responds that the Report and Recommendation correctly concluded that because the ALJ found the purported limitation of leg swelling to be unsupported when it found that her subjective allegations were inconsistent with the evidence of normal gait, station, and coordination appearing throughout the record. ([Filing No. 14 at 21](Filing No. 14 at 21)) ([Filing No. 6-2 at 17-20](Filing No. 6-2 at 17-20)). The Commissioner argues" the ALJ's decision as a whole showed that his RFC determination rested on substantial objective evidence and reasoned analyses of medical opinions and Plaintiff's allegations. Accordingly, the R & R correctly concluded that the ALJ's RFC determination is supported by substantial evidence in the record." ([Filing No. 16 at 5](Filing No. 16 at 5)).

Having reviewed the issue *de novo*, the Court agrees with the Magistrate Judge that the ALJ's decision as a whole showed that his RFC determination rested on substantial objective evidence and reasoned analyses of medical opinions and Plaintiff's allegations.  The record shows that the ALJ discussed Dr. Wells opinion that Tamara is incapable of performing even low stress work—and then noted Dr. Wells statement that Tamara is able to sit, stand, and walk for less than two hours during an eight-hour workday. *Id*. at 22. The ALJ also found the opinions offered by Dr. Wells to be entirely inconsistent with the medical findings when discussing Tamara's RFC restrictions and limitation. The ALJ explained why he concluded that Tamara does not need a leg elevation option, and discussed why he gave little weight to Dr. Patel's opinion concerning leg elevation. An RFC without a sit/stand restriction may not *necessarily* conflict with an RFC limited to sedentary work. The Court agrees with the Magistrate Judges finding that because the ALJ did

13

not include a sit/stand limitation in the RFC, that limitation did not need to be presented to the vocational expert to determine job availability. The Court finds no reversible error on this claim.

### 2. Elevation Restriction

Tamara next argues that the ALJ erred in failing to include an elevation restriction and concluding, without support, that Tamara suffered "merely periodic" episodes of swelling (Filing No. 15 at 12). Tamara contends that testimony from the vocational expert shows that an elevation restriction would have been outcome determinative, so the "ALJ needed to at least discuss if an elevation restriction was considered and, if so, why it was rejected." *Id.* The Magistrate Judge found that the ALJ adequately discussed how the medical evidence shows that while Tamara had a history of lower extremity swelling, she did not have constant swelling; why the ALJ rejected the opinions of Drs. Patel and Walls regarding the need for an elevation restriction; and why the ALJ rejected Tamara's subjective complaints about her lower extremity swelling. Having reviewed the issue *de novo*, the Court agrees with the Magistrate Judge.

Dr. Walls opined that Tamara needed an elevation restriction due to swelling (Filing No. 6-10 at 49). In his RFC analysis, though, the ALJ noted that Tamara had experienced a history of lower extremity swelling "but not constant swelling," as shown by evidence before and during the relevant period (Filing No. 6-2 at 18). Dr. Patel opined that Tamara needed an elevation restriction due to dizziness (Filing No. 6-10 at 67). But the ALJ also explained how the record evidence shows that Tamara's complaints of dizziness are less severe than alleged (Filing No. 6-2 at 15 ("The medical evidence of record demonstrates that the claimant has reported some dizziness, … but denied it later."); *id.* at 18 (noting that in April 2021, "[t]he claimant denied having dizziness. In May 2021, an electrocardiogram revealed no evidence of ischemia.")). The ALJ also adequately explained why he did not believe Tamara's testimony that she constantly elevated her legs during her trip to Florida. *Id.* at 21. The ALJ's analysis of the record evidence of Tamara's swelling and

dizziness is sufficient to draw an accurate and logical bridge between the evidence and his conclusion that no elevation restriction was needed. *See Zellweger v. Saul*, 984 F.3d 1251, 1254 (7th Cir. 2021) (stating that an ALJs' decisions may be considered "in light of elaboration and analysis appearing elsewhere in the decision"); *Siera A. B.-S. v. Kijakazi*, No. 21-cv-00247, 2022 WL 4232965, at *3 (S.D. Ind. Sept. 14, 20220 (stating that ALJ must only "articulat[e] a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability").

### 3. **Stress-Related Limitations**

Third, Tamara argues that the ALJ erred by failing to incorporate stress into the RFC, as required by SSR 85-15, despite "significant evidence that [Tamara's] inability to handle stress would impact her ability to work" (Filing No. 15 at 13). The Magistrate Judge concluded that the ALJ sufficiently considered the medical evidence showing that Tamara's headaches and vertigo were tied to her stress levels, appropriately discounted the opinions of Drs. Patel and Walls, and adequately accommodated Tamara's headaches and vertigo in the RFC (Filing No. 14 at 23).

Pursuant to SSR 85-15, the ALJ must consider whether an individual "can meet the mental demands of past relevant work in spite of the limiting effects of his or her impairment and, if not, whether the person can do other work . . . . This decision requires careful consideration of the assessment of RFC." 1985 WL 56857. The regulation further provides that "[d]etermining whether these individuals will be able to adapt to the demands or 'stress' of the workplace is often extremely difficult." *Id*. As the Magistrate Judge noted, SSR 85-15 "is not intended to set out any presumptive limitations for disorders, but to emphasize the importance of thoroughness in evaluation on an individualized basis." *Id.*

SSR 85-16 provides that in an RFC evaluation for mental disorders, the decisionmaker must consider "the ability to understand, to carry out and remember instructions, and to respond appropriately to supervision, coworkers, and customary work pressures in a work setting." 1985

15

WL 56855; *see Felver v. Barnhart*, 243 F. Supp. 2d 895, 906 (N.D. Ind. 2003) (describing SSR 85-15 and 85-16 as identifying "job attributes" that are "likely to produce disabling stress in the claimant"). The ALJ discussed each of these factors.

The ALJ noted that Tamara "did not allege any difficulty with understanding, or following instructions." ([Filing No. 6-2 at 14](#).) The ALJ further noted that "at the hearing, the claimant's testimony alluded to her having difficulty with memory," but "[d]espite these allegations, the majority of mental status examination[s] during the relevant period . . . demonstrat[e] that the claimant's memory was observed to be within normal limits." *Id.* The ALJ continued, "these examinations also indicate that the claimant's insight and judgment are more often than not within normal limits," and "[t]he medical evidence of record does not show that the claimant has a significant limitation in this area of mental functioning." *Id.* at 15. As to Tamara's ability to interact with and respond appropriately to others, the ALJ noted that "[i]n an adult function report, [Tamara] reported that she socializes with others via email, text, or video chat." *Id.* The ALJ also explained that in January 2020, Tamara reported that she "maintained contact with her 'life group,'" even though "she had not attended church lately." *Id.* at 16. "The claimant also described having closer [*sic*] with whom she remained in contact." *Id.* Further, the ALJ explained that despite stating, "that she does not leave her home to visit others," Tamara "reported that she regularly leaves her home on a regular basis to go to the grocery store." *Id.* at 15. And "[d]espite the claimant's allegations of difficulty leaving her home, the claimant went on two trips to Florida to visit family members." *Id.* at 15-16. Additionally, the ALJ observed that "at the hearing, the claimant was quite articulate, well-spoken, and a good historian" and "did not display [the] extreme social anxiety she alleges." *Id.* at 16.

In the above analysis, the ALJ thoroughly considered how Tamara would be able to deal with the stresses of work, as described in SSR 85-15 and 85-16, and the RFC appropriately stated that Tamara "is able to understand, remember and carry out simple instructions" and is "able to make simple work-related decisions." (Filing No. 6-2 at 17); *see Launer v. Colvin*, No. 14-cv-01990, 2016 WL 775923, at *5 (S.D. Ind. Feb. 3, 2016) (concluding ALJ did not err in considering limitations related to mental impairment, stating "'[b]oth psychological examiners felt the claimant would be able to interact appropriately with coworkers, supervisors, and the public'"); *Nickerson v. Astrue*, No. 12-cv-00461, 2013 WL 453463, at *3 (S.D. Ind. Feb. 5, 2013) (stating ALJ must consider SSR 85-16 factors to determine how claimant would handle stress in the workplace).

The ALJ also addressed whether, and to what extent, Tamara's cardiovascular impairments, headaches, and vertigo might affect her ability to handle stress in the workplace. For example, the ALJ noted that during an August 2021 visit, Tamara reported that despite being "stressed because she was planning to visit her daughter and fiancé in Florida," her "[c]ardiovascular and respiratory examinations were normal with no evidence of fibrillation." (Filing No. 6-2 at 19.) The ALJ also noted that Tamara reported that her headaches and migraines were "directly related to her stress level and her hydration level," but, as the Magistrate Judge concluded, the ALJ appropriately accommodated Tamara's headache and migraine impairments in the RFC. (Filing No. 14 at 23.)

Additionally, as discussed above, the Court agrees with the Magistrate Judge that the ALJ adequately explained why he found the opinions of Drs. Patel and Walls unpersuasive. *Id.* The Court finds no error in the ALJ's assessment of Tamara's mental impairments, including her ability to adapt to the stress of the workplace. The ALJ complied with SSR 85-15 and 85-16 by analyzing the factors that bear on a claimant's ability to adapt to stress in the workplace. Tamara does (shouldn't this say does not) identify how the RFC did not sufficiently address her mental

17

limitations or offer any specific limitations that should have been included in the RFC. The Court finds no error in the ALJ's decision not to include a stress-related restriction in the RFC.

### 4. Time-Off-Task and Absenteeism

Tamara lastly argues that the ALJ committed error by failing to address whether she could meet off-task and absenteeism benchmarks (Filing No. 15 at 13). The Magistrate Judge found that the ALJ appropriately rejected the evidence purportedly supporting such a limitation, including the opinions of Drs. Patel and Walls, provided "various environmental and pace limitations" in the RFC that accommodate Tamara's mental impairments, and "properly grounded" his decision not to include a time-off-task or absenteeism limitation in substantial evidence. (Filing No. 14 at 25.) Upon *de novo* review, the Court again agrees with the Magistrate Judge.

As this Court has already noted, the ALJ thoroughly analyzed the record evidence and Tamara's reports of headaches, depression, dizziness, swelling, and other conditions that might make it difficult to maintain focus at work and work without absence. The ALJ specifically described the record evidence showing that Tamara's impairments were not as severe as complained, demonstrating Tamara's ability to concentrate and maintain a routine (Filing No. 6-2 at 15–16, 20). This analysis is sufficient to draw an accurate and logical bridge between the evidence and the ALJ's conclusion that time-off-task and absenteeism limitations were inconsistent with and not supported by the evidence. The ALJ did not err in declining to include those limitations in the RFC or posed hypotheticals.

## IV. CONCLUSION

For the reasons set forth above, the Court finds no error in the Magistrate Judge's Report and Recommendation and therefore **OVERRULES** Tamara's Objections (Filing No. 15). The Court **ADOPTS** the Magistrate Judge's Report and Recommendations (Filing No. 14). The final decision of the Commissioner is **AFFIRMED.**

Final Judgement will issue in a separate Order.

**SO ORDERED**.

Date: 3/29/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Adriana Maria de la Torre
TOWER LAW GROUP
adriana@towerlawgroup.com

Taehee Hwang
SOCIAL SECURITY ADMINISTRATION
taehee.hwang@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov